Choate, D. J.
This is a bill in equity, brought by the assignee in bankruptcy of Theodore' E. Baldwin and Edward W, Burr, who constituted the firm of Theodore E. Baldwin & Co., to recover moneys alleged to have been fraudulently diverted from the assets of that firm to pay the individual debts of Baldwin, and also to recover a carriage fraudulently transferred by Baldwin to the defendant Brewster, and to enjoin the proof of certain notes held by the defendants against the firm or Baldwin individually. The defendants are James B. Brewster and a manufacturing corporation, “ J. B. Brewster & Co.,” of which the defendant Brewster is the president and principal stockholder.
The bill alleges that the firm of Theodore E. Baldwin & Co. was formed on the tenth day of August, 1870, and was adjudged bankrupt November 25, 1871, upon a creditor’s petition, filed November 6,1871; that Burr had no knowledge or experience in the business, which was that of selling carriages at No. 786 Broadway, New York; that from January 1, 1860, to January 1, 1869, and again from March 1, 1869, to December 1, 1869, Baldwin and the defendant Brewster had been in partnership, carrying on a like business upon the same premises; that their business in 1869 had been largely unprofitable, their losses amounting to over $46,000; that *161 upon the settlement of their copartnership business Baldwin assumed all the indebtedness of the business, amounting to $73,000, and besides that sum was found to be indebted to Brewster individually about $14,000, for which Brewster held his notes; that a part of these notes were transferred to “ J. B. Brewster & Co.,” with Brewster’s guaranty of their payment ; that at the time of this settlement Baldwin was largely insolvent, which the defendants well knew, and that on and before August 10, 1870, Baldwin was, to the knowledge of defendants, contemplating the stoppage of business, and an assignment for the benefit of his creditors; that thereupon and in view of these facts the defendant Brewster, “fraudulently combining and confederating with said Baldwin, formed the fraudulent plan and design of inducing said Burr to make a copartnership agreement with said Baldwin, and to contribute to the capital stock of the firm so to be formed the sum of $50,000, upon the corrupt and fraudulent agreement with said Baldwin, and with the fraudulent design and intention that said Baldwin would and should thereafter use said $50,000, and the funds, property and credits of the firm so to be formed, in paying the said indebtedness due from Baldwin to Brewster and ‘J. B. Brewster & Co.,’ and the said indebtedness of Brewster & Baldwin assumed by Baldwin.”
It is then alleged that in pursuance of said fraudulent combination and intention the defendant Brewster falsely and fraudulently represented to Burr that the business carried on by Brewster & Baldwin had been largely profitable, to the extent of over $100,000 a year; that Baldwin was the best man for the business in the city of New York, and that they could make $40,000 to $50,000 a year in the business; and that the defendant Brewster fraudulently advised and urged Burr to go into the partnership and to put in his $50,000, and concealed from him the losses of the last year, and the fact that Baldwin was largely indebted and insolvent, and contemplating an assignment; that Burr, believing and trusting to these representations, made the partnership agreement, and contributed his capital, in all $65,000, to the firm; that in pursuance of the same fraudulent design and conspiracy, *162 and in violation of the terms of the partnership agreement, the defendant Brewster induced Baldwin to pay to him and to “ J. B. Brewster & Co.” nearly all of the debts so owing to them from Baldwin, out of the funds of the firm and the moneys so contributed by Burr, and that by these fraudulent practices, and this use of the assets of the firm, it was compelled to stop payment and go into bankruptcy; that to cover up the real nature of these payments the defendants pretended to loan money to the firm on their notes, knowing that the proceeds were to be used for the aforesaid fraudulent purpose.
It is then averred that the defendants have made claims and filed proofs of debt for a 7arge amount against the joint estate, upon certain notes and a check described purporting to be the obligations of the firm; that all of said notes and said check were given by Baldwin in pursuance of the said fraudulent design and intention, and that for one of these notes the defendant Brewster holds a carriage, which was the property of the firm, and was delivered by Baldwin to Brewster as security for Baldwin’s individual indebtedness, in pursuance of the aforesaid fraudulent design and intention; that all these acts and all this application of the funds, property and credits of the firm were without the knowledge or consent of Burr, and in fraud of his rights and of the copartner, ship creditors of the firm, and of the individual creditors of Burr, and of the complainant as assignee.
The bill then prays for relief that these transactions be decreed to be in fraud of the firm and of Burr, and of the firm creditors, and of the individual creditors of Burr, and of the complainant as assignee; that the defendants refund the moneys so paid to them; that the delivery of the carriage be decreed to have been in fraud of the creditors of the firm, and that the complainant recover it or its value; and that they be enjoined from any proceedings in bankruptcy or otherwise touching said notes, and for general relief.
Prom this recital of the allegations of the bill it will be seen that the whole basis of the suit is the fraudulent conspiracy between Brewster and Baldwin — First, to inveigle Burr into a partnership with Baldwin; and, second, that being ac *163 complished, to divert the funds of the copartnership from their legitimate use, in carrying on its business and paying its debts, to the payment of the individual debt of Baldwin to Brewster.
All the alleged illegal and invalid acts complained of are charged to have been done in pursuance of this fraudulent purpose and design, and the sole ground for relief against them in equity is this alleged fraud. The bill, therefore, very properly avers, and probably necessarily does so, that the diversion of the firm assets complained of was without the consent of Burr. The first question, therefore, to be determined in the cause is whether the complainant has proved the fraud alleged. Upon a careful consideration of the testimony and documentary'proofs relied on by his counsel as establishing the existence of this fraudulent design and purpose on the part of the defendant Brewster, I think there is an entire failure to prove the fraud, either in its whole scope as alleged in the bill, or in any part.
The alleged fraud of Brewster in getting Burr into the partnership consists of three parts:
First, statements of matters of facts averred to be false; second, concealment of facts, the knowledge of which would, if known, have prevented Burr from going into the partnership; and, third, expressions of opinion as to the probable profits of the business of the proposed firm, known at the time to Brewster to be grossly extravagant and misleading. As to the first they were not shown to be false. The proof, on the contrary, is that the business carried on by Brewster & Baldwin had been largely profitable, to the extent of over $100,000 in a single year; that Baldwin was the best man in the city of New York, as a salesman, for carrying on the business; and that their place of business, Broadway, corner of Tenth street, was the best stand for the business in the city of New York. This is a more correct statement of the representations made by Brewster to Burr than that contained in the bill, and they were true in every particular.
The facts claimed to have been concealed were Baldwin’s embarrassed financial condition, and the extent of the losses *164 of the firm of Brewster & Baldwin while that firm did business in 1869. Whether the omission to communicate a fact will be considered a fraud depends largely on the circumstances attending the particular case, and what duty, in respect to the matter in question, the party charged with improper concealment owes to the other party. Brewster undoubtedly had an interest in Baldwin’s obtaining a partner with capital, and when the connection with Burr was first proposed he certainly desired, and had reason to desire, its consummation. He knew, also, that in the interviews between himself and Burr that possible partnership was in contemplation, and that the interviews, or one of them, were specially arranged for the purpose of considering this subject.
Assuming, however, that the circumstances were such as called for the communication on his part of any thing known to him which might influence Burr, and which he had any reason to believe Burr was ignorant of or would desire to know— and this, I think, is as strongly as the complainant’s case at this point can be put — there is still no proof of fraudulent concealment. Brewster knew that Baldwin and Burr were intimate friends and constantly together; that for several months Burr had been aiding Baldwin financially; that he had obtained from him the preceding April a pledge of a large part of his stock of carriages as security for his loans of some $35,000. He had good reason to believe, and did believe, that Burr knew that Baldwin was, and had for several months been, in financial straits; that he found it difficult to meet his current maturing obligations in his business.
The fact that the business had been poor, and carried on at a loss for the last year, was not concealed from Burr. On the contrary, it was matter of discussion between the parties. In the settlement of their partnership affairs Baldwin & Brewster agreed upon a certain sum, about $46,000, which was treated as the amount of the losses in the business, for the purpose of such settlement. It was not strictly and exclusively losses in business. It included allowances for depreciation in what had been spent on the premises leased by the firm and other matters. The account had been made *165 up very favorably for Baldwin, particularly in this item of losses, of which Brewster bore two-thirds. In view of these facts, and of Burr’s intimacy and close business relations with Baldwin, known as it was to Brewster, I think there was clearly no fraud in not communicating to Burr the details as to the losses of the firm, and as to Baldwin’s financial troubles, as he made no special inquiries about them.
In respect to the alleged exaggerated estimates of future profits given by Brewster, it is very difficult to prove fraud in such a matter, since this was the expression of an opinion only, and known to Burr to be so. It was not, however, shown that Brewster did not honestly entertain the opinion that he expressed. The complainant has put in evidence, and relies upon, the private letters of Brewster to Baldwin. It is claimed on the part of the defendants that in some respects these letters do not represent the real sentiments, feelings and opinions which on their face they appear to express; that they were written for a purpose, which required and accounts for great exaggeration of the financial difficulties referred to in them. But the complainant insists that they must be taken as truthful expressions of the thoughts and opinions of the writer. Taking them at his own estimate of their proper construction they abundantly show that Brewster really entertained the most sanguine expectations, fully up to those expressed to Burr, of the probable success of a firm in which Baldwin’s great abilities as a salesman should be aided by an amount of capital such as Burr proposed to put into the concern. There was, therefore, no proof of the alleged fraud in inducing Burr to go into the partnership.
It was also shown clearly by Burr’s own testimony that the representations of Brewster, whatever they were, were not the operative inducements by which he was led to take this step; that he had made up his mind not to go in, but was induced to change his purpose by the report and advice of his own book-keeper, whom he specially directed to make a thorough examination of Baldwin’s books. The complainant’s case is equally unfounded as to the other part of this' supposed conspiracy and fraud. So far is it from being *166 proved that the use of the copartnership assets to pay Brewster’s debt was without the knowledge or consent of Burr, that the contrary expressly appears by the testimony of Burr himself, who was complainant’s witness.
Brewster’s interest in having Burr join Baldwin, and furnish capital enough to do a successful business, was that Baldwin might be able to pay off his debt to him. This was perfectly well understood by all parties, and one of the inducements held out to Burr to come in was that if he did Brewster would give up $20,000 of his debt against Baldwin, upon the balance of it being promptly paid. Baldwin was to turn into the concern all his business assets, which were very valuable.
Under the circumstances, which it is unnecessary to detail more at large, it would be absurdly improbable that there should be any other expectation or understanding between the parties than that after the formation of the firm Baldwin should go on and reduce Brewster’s debt down to the limit of $20,000 by using the funds of the firm. Burr himself, who is alleged to have been defrauded by this having been done, testified that he expected Brewster to be paid out of the proceeds of the sales of the stock of goods which by the formation of the copartnership was to become its property. He says, indeed, that as between himself and Baldwin he understood such payments were to be charged to Baldwin, and not to the firm'. In other words, while he admits that he understood that Baldwin was to be allowed to use the firm’s funds to pay Brewster, the firm did not assume as its own Baldwin’s debt to Brewster. This qualification is of no importance. It simply affects a settlement of copartnership accounts between Baldwin and Burr. So far as Brewster’s rightful or wrongful receipt of the money goes Burr’s testimony distinctly negatives the alleged fraud of Brewster upon him or his firm in the receipt of these moneys.
It is, however, urged that by the copartnership articles the debt to Brewster was not assumed, and the copartners were expressly prohibited from using the firm’s funds to pay the debts of the individual partners. The suggestion has no *167 force. The articles constituted an agreement between Baldwin and Burr alone. Brewster was no party to them, and, as is proved, did not know what they contained. The question here is of the agreement between Brewster on the one hand and Baldwin & Burr on the other, and of a fraud practiced by Brewster on Burr. If it was the understanding between Brewster on the one part and Baldwin & Burr on the other that the firm funds, after the formation of the partnership, should be used in a particular way, no agreement between Baldwin and Burr, to which Brewster is not a consenting party, can possibly affect Brewster’s right, as against them both, to have the funds so used. Still less can such a secret agreement between them be adduced as proof that such use availed of by Brewster is a fraud upon either of them.
The complainant having failed to prove the fraud is entitled to no relief in this suit. The complainant claims that the debt due to Brewster was reduced below $20,000, and that therefore such of the notes now held by the defendants as represent a part of that original debt should be delivered up to be cancelled. The defendants insist, with better reason, I think, that the debt never was so reduced; that new loans were made from time to time to pay the notes representing this debt, and that within the true spirit and meaning of the agreement the debt has always exceeded $20,000. It is unnecessary, however, to determine this question. If the complainant is right the proper mode of raising the question is by proceedings under the bankrupt law for re-examining the proofs of debt. He can have no relief in this suit, because the fraud alleged as the sole ground of relief is not proven.
So, as to the carriage, if Baldwin exceeded his authority as a copartner in pledging it, and the pledge was without Burr’s knowledge or consent, or for any other reason Brewster’s claim to it is invalid, the remedy of the assignee is obvious enough. The only claim made in equity in this suit to recover it or its value is the same alleged fraud. Nor can the bill be sustained on the ground that the funds were diverted from an insolvent firm, to the knowledge of the de *168 fendants, to pay a partner’s individual debt, and, therefore, operated as a fraud on the creditors of the firm. Such seems not to be the scope of the bill. But, without regard to this question, it was not proved that at the time of the payments made the firm was known to the defendants to be or was in such a situation financially that such use of the firm’s funds was a fraud upon its creditors. Moreover, the payments, such as they were, having been made in pursuance of an agreement between Brewster and both partners, before the formation of the firm, to remit a part of his debt against Baldwin, the consideration of the payments to be so made out out of the firm assets, I do not see how either the firm or its creditors can claim that the payments were merely voluntary, or without consideration. The consideration enured indirectly to the benefit of the firm, inasmuch as the remission of part of his indebtedness would enhance the credit and financial ability of one of the partners. It is, therefore, unnecessary to consider the legal questions raised and discussed, touching a suit for the purpose of recovering firm assets fraudulently diverted as against its creditors alone.
I have attributed no weight to the evidence offered by the defendants tending to show that the complainant has been actuated by motives of personal animosity in bringing and carrying on this suit. His motives would be immaterial if he had proved a case against the defendants.
Bill dismissed, with costs.